## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| The First Mortgage Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 cv 6735 |
| v. | ) | Judge Moran |
| | ) | Magistrate Judge Cox |
| Michael Baser and America's Mortgage | ) | |
| Choice, LLC | ) | |
| | ) | |
| Defendants | ) | |

## AFFIDAVIT OF MICHAEL BASER

I, Michael Baser, being first duly sworn on oath do hereby state and depose as follows:

1.     I am a defendant in the captioned matter.

2.     On or about January 19, 2005, I became a shareholder in The First Mortgage Corporation, an Illinois corporation, the plaintiff in the captioned matter.

3.     I paid $50,000 to The First Mortgage Corporation in exchange for an approximate 3.5% ownership interest in the corporation. I was provided copies of two stock certificates issued by The First Mortgage Corporation showing that I still own 750 shares of common stock in the company.

4.     On or about January 19, 2005, I signed a Shareholder Agreement with The First Mortgage Corporation, portions of which are attached to the complaint.

5.     I am currently 34 years of age.  I am married and have four children. In order to raise $50,000 to purchase shares of The First Mortgage Corporation, I borrowed

-1-

$25,000 from the Great Lakes Bank, N.A. in Blue Island, Illinois under a five year loan agreement, $5,000 from The First Mortgage Corporation under a written promissory note (which I have repaid), and $20,000 from my father.

6.     I am a resident of Mokena, Illinois, and I have lived there for nine years. I have been a resident and citizen of Illinois since 1996.

7.     I graduated from Michigan State University in 1996 with a degree in criminal justice. I was employed with the Oak Park Police Department between 1996 and 1999. I then went to work for the Chicago Board Options Exchange in Chicago until September, 2003 after which I joined Draper & Kramer as a mortgage loan officer. While I was employed at Draper & Kramer, I was solicited by Tom Mencke, President of The First Mortgage Corporation, to work for his company.

8.     When I first became employed with The First Mortgage Corporation in February, 2004 as a mortgage loan officer, I had already developed a list of approximately 350 people with whom I had established a relationship through family, friends, or contacts from my prior employment situations. After I started with The First Mortgage Corporation in February, 2004, each and every "customer" or "contact" added to my list was developed by me personally or obtained through a referral from one of my established contacts, a friend, or family. No person on my list of "customers" or "contacts" was given to me by The First Mortgage Corporation. All the "customers" or "contacts" on my list arise from my personal relationship with that person.

9.     I am a mortgage broker duly licensed in the State of Illinois.

10.     Since June, 2004, I have worked at The First Mortgage Corporation strictly on a commission basis without a salary.

11.     The First Mortgage Corporation provided me with a Gateway laptop computer which I returned when I resigned from the company in July, 2007. While at the company, I hired an assistant in March, 2007, and I purchased a new Gateway laptop computer for her. The First Mortgage Corporation contributed 50% of the purchase price to the new Gateway laptop that I purchased for my assistant. When I resigned, I turned in my assistant's laptop, and then subsequently reimbursed the company its 50% contribution in exchange for its return back to me. These were the only two computers relating to the business of The First Mortgage Corporation which I had the ability to access with a password provided by the company. There were no other computers, either laptops or PC-type computers at the offices of The First Mortgage Corporation which were accessible by me.

12.     At no time did I ever gain access to any computer, other than the two Gateway laptops mentioned above that contained any information relating to the business of The First Mortgage Corporation.

13.     During the course of my work at The First Mortgage Corporation, my Gateway laptop computer operated by me contained the followng programs: (a) "By Referral Only" which is a web-based program that was password protected, (b) "Encompass," a loan origination software program,  and  (c) "Mortgage Coach," a software program that compares loan scenarios. The Gateway laptop operated by my

assistant contained only "By Referral Only" and "Encompass." I obtained permission from both Tom Mencke and Luis Soto, both officers of The First Mortgage Corporation, to install and use the above described software on the two Gateway laptop computers.

14.     The purchase price and annual license fees for "By Referral Only" were paid on a 50/50 basis by me and the company. This software program is available to the public on the open market. I installed my pre-existing customer information, as well as customer information I developed while at the company, in the "By Referral Only" program. The "customer information" consisted of name, address, social security number, telephone number or other contact information, and, if applicable, loan information about their particular loan. "By Referral Only" does not contain a function known in the business as loan origination software (LOS).

15.     "Encompass" is a software program that is available to the public on the open market and used widely by loan officers, brokers and other personnel in the mortgage business. "Encompass" software (LOS software) allows the user to obtain a credit rating on a potential customer and also prepares and prints forms acceptable to Fannie Mae with information that is specific to the mortgage transaction.

16.     "Mortgage Coach" is also available to the public on the open market. I paid the full purchase price for the "Mortgage Coach" software, and its license, as well as all annual fees, without any contribution from The First Mortgage Corporation. I was given permission by Luis Soto, an officer of The First Mortgage Corporation, to use a certain APICD key in conjunction with "Encompass" software in order to enable me to show my

-4-

customers different mortgage scenarios under different terms for the purpose of determining a mortgage that best fit the needs of the customer. There were several occasions when Tom Mencke, president of the plaintiff, requested I run mortgage scenarios using my "Mortgage Coach" software for his personal clients and for public presentations.

17.    I did not leave The First Mortgage Corporation for the purpose of taking "its" business to compete with them in any illegal way. I left The First Mortgage Corporation because I was not receiving honest information about the commissions and fees earned by the company on the transactions with my customers and because commissions paid to me by the company were less than commissions paid to other shareholders/brokers who had the made the same investment in the company as I made.

18.    After I resigned, I gave back my Gateway laptop to The First Mortgage Corporation. When I gave back my Gateway laptop, it contained all the information about my customers as was originally input. No information about customers that I brought to The First Mortgage Corporation was deleted. I have learned that The First Mortgage Corporation has solicited some of my customers who were listed on the software programs contained in that computer.

19.    When I returned my Gateway laptop, the only program that I "deleted" was the "Mortgage Coach" software program because I had paid for the program and its annual fees. However, the information that had been "saved" from my prior use of the program was still intact on the computer and had not been deleted. Moreover, the

"Mortgage Coach" program was probably intact and recoverable. In any event, the "Mortgage Coach" program is available on the market if First Mortgage Corporation wishes to purchase the program.

20.     I retained the information about my customers from the "By Referral Only" program because those  customers, and the information about them, were developed by me, and not by The First Mortgage Corporation.  However, the same customer information which I  retained was given, without any deletions, to The First Mortgage Corporation with the two Gateway laptop computers returned to the company.

21.     I returned my assistant's newer Gateway laptop before reacquiring it from The First Mortgage Corporation. When I returned the newer Gateway laptop to the company, the computer contained all the information, without any deletions, as originally input, about all my customers, their mortgages, and all my marketing information relating to those customers. When The First Mortgage Corporation gave the newer Gateway laptop back to me after I reimbursed the company for one-half the purchase price, the company had deleted all the information that once existed on the computer.

22.     I did not damage, alter, or destroy any information on any "company protected" computer.  I did not "exceed" my authority or permission, or use any "company protected" computer without authority or permission.

23.     I was, and still am, a shareholder in The First Mortgage Corporation by reason of my $50,000 investment in the company and the signing of a Shareholder

Agreement with the company. The company has refused to buy back my shares.

24.    As a shareholder/broker with The First Mortgage Corporation, I had a right to use and retain information about people with whom I established personal relationships and brought to the company as customers or whom I listed as potential customers in my computer. I had authority to use two Gateway laptop computers as a licensed mortgage broker who was a shareholder with a $50,000 investment in the company. I also had the right to delete one software program entitled "Mortgage Coach" which belonged to me exclusively because I paid for the program, and the license, and used it as part of my personal work product when marketing to my contacts.

25.    I returned all the information that had originally been input or saved on my two computers back to The First Mortgage Corporation when I resigned.

26.    The assistant whom I hired in March, 2007 was paid exclusively by me, and not by the First Mortgage Corporation, out of my earned commissions.

27.    My assistant acted solely at my direction and under my control, and not under the supervision and/or control of the First Mortgage Corporation.

28.    Any and all methods of compiling and/or classifying information about my contacts and customers were at my direction given the software programs. The First Mortgage Corporation did not have any input, or contriubtion to, the method by which my contact information was stored.

29.    At no time did the First Mortgage Corporation exercise any control over me with respect to my creation of contact information on the above described software

programs or on my ability to access that information from the two laptop computers mentioned above.

30.     The First Mortgage Corporation has not spent any money on research and/or development of my contact information, which I created solely on my own.

31.     With respect to The First Mortgage Corporation Employee Handbook, sections of which are attached to the complaint, it was my understanding that nothing in the Handbook imposes a contract obligation on me or on First Mortgage.  My understanding is based on the language in Section 101 of the Employee Handbook, which states, "It [this Handbook] is not an employment contract and is not intended to create contractual obligations of any kind."

32.     I never signed a nondisclosure agreement as a condition of my employment. It was my understanding that I was not contractually bound in any way by Section 112 of the Employee Handbook.  It was my further understanding that the definitions of "Confidential Business Information" and "Trade Secrets", as contained in Section 112 of the Employee Handbook, did not include the identities of my contacts or any of the information I gathered about my contacts, all of which was obtained by me alone.

33.     I am not aware of any loss or damage to any computer system or to the "integrity or availability" of any computer data, that has been suffered by The First Mortgage Corporation as a result of my return of my two computers back to the company, or as a result of any action that I took in relation to those two computers.

34.     Attached hereto as Exhibit A is the 24-page complaint (without exhibits)

filed against me by the First Mortgage Corporation in the Circuit Court of Cook County.

After my lawyer filed a motion to dismiss the complaint, the First Mortgage Corporation

voluntarily dismissed the state court case on October 30, 2007.  Attached as Exhibit B

is a copy of a court order provided to me reflecting the voluntary dismissal.

### FURTHER AFFIANT SAYETH NAUGHT



_____
/Michael Baser

Subscribed and Sworn to Before Me
This First Day of February, 2008.

_____
Notary Public

```
"OFFICIAL SEAL"
S GODDARD FOXE
COMMISSION EXPIRES 03/05/09
```

# EXHIBIT A

Firm No. 15956

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| THE FIRST MORTGAGE CORPORATION, | ) |
| | ) |
| | ) Case No. |
| Plaintiff, | ) |
| | ) Judge |
| v. | ) |
| | ) JURY DEMANDED |
| MICHAEL BASER and | ) |
| AMERICA'S MORTGAGE CHOICE, LLC | ) |
| | ) |
| | ) |
| Defendants. | ) |

2007L008424
CALENDAR/ROOM 5
TIME 00:00
Breach of Contract

### COMPLAINT

Plaintiff The First Mortgage Corporation ("First Mortgage"), for its complaint

against defendants Michael Baser ("Baser") and America's Mortgage Choice, LLC ("America's

Mortgage") (collectively, "Defendants"), states as follows:

### NATURE OF THE CASE

1.    This is an action by a residential mortgage lender against a form[.] ·

employee and his new employer for breach of fiduciary duty, inducing a breach of fiduciary

duty, breach of contract, tortious interference with contract, common law unfair competition,

misappropriation of trade secrets and violating the Computer Fraud and Abuse Act.

### THE PARTIES

2.    Plaintiff First Mortgage is a residential mortgage lender.  It is incorporated

in Illinois with its principal place of business in Flossmoor, Illinois.

3.    Defendant America's Mortgage is also a residential mortgage lender.  It is

incorporated in Illinois with its principal place of business at 1100 Jorie Blvd., Suite 201, Oak

Brook, Illinois 60523.

172112_1.DOC

4.    Defendant Baser, an individual, is a shareholder and former employee of First Mortgage and is currently employed with America's Mortgage. Baser is a citizen of Illinois who resides at 11005 Carpenter, Mokena, Illinois 60448.

5.    Venue is proper in this Court under 735 ILCS 5/2-101 because Defendants reside in Cook County, Illinois and the actions giving rise to this Complaint occurred in Cook County, Illinois.

## FACTS

**Baser Begins Working for First Mortgage**

6.    First Mortgage was established in 1984 and is a residential mortgage lender. First Mortgage is one of the leading residential mortgage lenders in Chicago and the surrounding suburbs.

7.    First Mortgage has three offices. Its headquarters are in Flossmoor, Illinois, and additional offices are in Joliet, Illinois and Dyer, Indiana.

8.    Baser was employed in First Mortgage's Flossmoor, Illinois office from February 2004 until July 2007.

9.    First Mortgage's president, Thomas Mencke ("Mencke"), first met Baser in May 1999 when Baser worked for the Chicago Board of Trade and was Mencke's client. At that time, Baser told Mencke he was interested in working in the mortgage lending industry. As a result, Mencke arranged for Baser to train with a third-party company not affiliated with First Mortgage in preparation for Baser to join First Mortgage as a loan officer.

10.    In February 2004, after six months of training with the third-party company, Baser joined First Mortgage as a loan officer.

2

11.    First Mortgage is a corporation with seventeen shareholders ("Shareholders"), including Baser. Each Shareholder owns a specific number of shares in the corporation.

12.    Although Baser did not meet the criteria to become a Shareholder, First Mortgage allowed Baser to buy into the corporation and become a Shareholder for $50,000. Upon information and belief, Baser obtained $45,000 to become a Shareholder with a loan from his father. Baser borrowed the remaining $5,000 from First Mortgage.

**The Shareholder Agreement Precludes Baser from Competing with First Mortgage**

13.    Each Shareholder has signed an agreement with First Mortgage ("Shareholder Agreement"). On January 19, 2005, Baser signed the Shareholder Agreement. A true and correct copy of the Shareholder Agreement is attached as Exhibit A.[1]

14.    In the Shareholder Agreement, Baser agreed, among other things, that for a period of one year following his termination from First Mortgage, he would not engage in certain activities. Baser agreed that he would not engage in competitive business within 50 miles of First Mortgage's Flossmoor location, he would not solicit customers from First Mortgage, and he would not solicit First Mortgage employees to leave First Mortgage. (Ex. A at 22-23).

15.    Article 23 of the Shareholder Agreement, entitled "Restrictive Covenants," states:

>          that while [Baser] . . . is a shareholder of the
>          Corporation and for one (1) year thereafter, [Baser]
>          shall not directly or indirectly, in any capacity . . .
>
> i.       engage in any business within a fifty (50) mile radius of the
>          Corporation's offices at 19831 Governors Highway,
>          Flossmoor, Illinois, which is competitive with the business of
>          the Corporation;

---

[1] Due to the confidential nature of the Shareholder Agreement, First Mortgage has only attached the relevant pages to the Complaint.

3

    ii.      solicit any customer of the Corporation (which shall include advising any customer that the Shareholder has begun, or will begin to, work for or with any other business which is competitive with the Corporation);

    iii.     induce or encourage any customer of the Corporation to not do business with the Corporation, or to curtail or reduce the amount of business such customer does with the Corporation; or

    iv.     perform any services, or accept any orders for services, for or from any customer of the Corporation.

(Ex. A at 22-23.)

    16.    The Shareholder Agreement defines a customer as "any customer who is a customer of the Corporation, or was a customer of the Corporation in the two (2) year period prior to the date the Shareholder is no longer a shareholder of the Corporation." (Ex. A at 23).

    17.    Baser also agreed that, for a period of one year following his being a Shareholder, he would not:

    either directly or indirectly, in any capacity . . . solicit for hire any employee of the Corporation or initiate any discussions to induce or encourage any employee of the Corporation to terminate his or her employment with the Corporation.

(Ex. A at 23.)

    18.    Baser acknowledged that a court could "modify and enforce" the restrictive covenants "to the extent that it believes to be reasonable under the circumstances existing at that time." (Ex. A at 23.)

## The Employee Handbook Prevents Baser from Disclosing or Retaining Confidential First Mortgage Information

    19.    First Mortgage developed an Employee Handbook (the "Handbook") "to describe the expectations of [its] employees and to outline the policies, programs, and benefits

available to eligible employees." A true and correct copy of the December 15, 2006 Handbook
is attached as Exhibit B.

20.     On February 3, 2004, Baser acknowledged receiving a copy of the
Handbook. A true and correct copy of Baser's Employee Acknowledgement Form is attached as
Exhibit C.

21.     Among other things, the Handbook describes First Mortgage's policy
regarding non-disclosure of First Mortgage's confidential and trade secret information.

22.     Section 112 of the Handbook, entitled "Non-Disclosure," states:

> The protection of confidential business information and
> trade secrets is vital to the interests and the success of
> FIRST MORTGAGE. Such confidential information
> includes, but is not limited to, the following examples:
>
> ❖ compensation data
>
> ❖ financial information
>
> ❖ labor relations strategies
>
> ❖ marketing strategies
>
> ❖ pending projects and proposals
>
> All employees may be required to sign a non-disclosure
> agreement as a condition of employment. Employees who
> improperly use or disclose trade secrets or confidential
> business information will be subject to disciplinary action,
> up to and including termination of employment and legal
> action, even if they do not actually benefit from the
> disclosed information.

(Ex. B at § 112.)

23.     Section 702 of the Handbook, entitled "Return of Property," states:

> Employees are responsible for all FIRST MORTGAGE
> property, materials, or written information issued to them
> or in their possession or control. All FIRST MORTGAGE

property must be returned by employees on or before their
last day of work.

* * *

(Ex. B at § 702.)

**Baser Resigns and Breaches His Agreements with First Mortgage**

24.     On July 5, 2007, Baser entered Mencke's office, handed Mencke a
resignation letter and tendered his resignation.

25.     Mencke encouraged Baser to remain with First Mortgage, but Baser
refused.  Baser's final day working for First Mortgage was July 12, 2007.  That same day, Baser
returned his First Mortgage-issued laptop to First Mortgage.

26.     Baser consulted with an attorney prior to resigning from First Mortgage.
Upon information and belief, the attorney with whom Baser consulted was Joanne F. Hurley of
Kelly, Olson, Michod, DeHaan & Richter, L.L.C. ("Kelly Olson").  Upon information and belief,
Ms. Hurley and Kelly Olson also represent America's Mortgage.

27.     America's Mortgage, Ms. Hurley and Kelly Olson were aware of the
Shareholder Agreement when Baser resigned from First Mortgage.  Ms. Hurley and/or Kelly
Olson told Baser that the non-solicitation and non-competition clauses in the Shareholder
Agreement were "well drafted."

28.     Baser knew when he resigned that he was obligated to abide by the non-
competition and non-solicitation clauses in the Shareholder Agreement after he was no longer
employed by First Mortgage.

**America's Mortgage Induces Baser to Breach His Fiduciary Duties to First Mortgage**

29.    America's Mortgage is a residential mortgage broker directly competing with First Mortgage. The website for America's Mortgage informs customers that America's Mortgage "Provid[es] Mortgage Solutions for Your Long-Term Financial Plan!"

30.    America's Mortgage currently has only six employees in Oak Brook, Illinois. Baser told Mencke that America's Mortgage intends to expand its operations to eighty locations within three years. Baser also told Mencke that, after America's Mortgage has expanded its operations for the next three years, it intends to sell its business.

31.    Upon information and belief, Baser was looking for employment with competitors of First Mortgage, and America's Mortgage in particular, as early as April 2007.

32.    In April 2007, Baser attempted to sell his shares back to First Mortgage. Baser claimed that his father was ill and he did not want to be indebted to him. First Mortgage declined to purchase Baser's shares at that time, but instead offered to refinance them. Baser chose not to refinance his shares.

33.    Upon information and belief, Baser wanted to sell his shares back to First Mortgage so that he could use the money he earned on the sale to become a part owner of America's Mortgage.

34.    Baser believed that First Mortgage's lead generation system was antiquated. Baser believed that if he went to work for America's Mortgage, he would receive superior training with newer systems.

35.    In early June 2007, Baser attended a strategic equities seminar in Las Vegas ("Las Vegas Seminar"). Upon information and belief, Joe Stumpf ("Stumpf"), an investor in America's Mortgage, also attended the Las Vegas Seminar. Upon information and belief,

Stumpf arranged for Baser to meet with the owners and/or other investors in America's

Mortgage during the Las Vegas Seminar.  Therefore, Baser intended to leave First Mortgage to

join a direct competitor at least one month before his resignation.

**First Mortgage's Customers and Confidential Information**

36.    First Mortgage's biggest asset is its customers.

37.    First Mortgage stores its customer and referral information in confidential

electronic databases.  In 2006, 80% of First Mortgage's business was generated through these

databases.

38.    While employed by First Mortgage, Baser used a First Mortgage-issued

laptop computer.

39.    Baser had access to First Mortgage's confidential customer and referral

information.  Baser used two different databases, entitled By Referral Only ("By Referral") and

Mortgage Coach, to maintain customer and referral information while employed by First

Mortgage.  By Referral and Mortgage Coach are marketing tools which contain, among other

things, confidential First Mortgage customer and referral information.

40.    Baser built databases for his own use in By Referral and Mortgage Coach

using First Mortgage's confidential customer information.  Baser could only access his By

Referral database by entering a password.

41.    Baser also had a Microsoft Excel database containing customer and

referral information that he kept on his First Mortgage-issued laptop computer.

42.    No other loan officer at First Mortgage had access to Baser's databases.

Similarly, Baser did not have access to any other loan officer's customer and referral databases.

43.    First Mortgage maintains a separate database on its computer system ("First Mortgage database"). The First Mortgage database contains valuable, detailed and confidential information about First Mortgage's customers and the terms of their mortgage loans with First Mortgage. First Mortgage began building the First Mortgage database in 1993 and still uses it today.

44.    First Mortgage made efforts appropriate under the circumstances to protect the confidentiality of its confidential databases. One First Mortgage employee ("gatekeeper") is responsible for maintaining the First Mortgage database. Loan officers, including Baser, are only given information relating to their own customers from the gatekeeper. The First Mortgage database is kept offsite at the gatekeeper's home to further protect its integrity. All First Mortgage-issued laptops are password-protected to protect the confidential customer information contained on the computer.

45.    Upon information and belief, Baser kept a copy of the Excel, By Referral, Mortgage Coach and First Mortgage databases after he resigned from First Mortgage. Upon information and belief, Baser has provided the information from First Mortgage's confidential databases to America's Mortgage and is using that information for his and America's Mortgage's benefit.

**The First Mortgage Website**

46.    Baser has copied First Mortgage's website. Baser's website, located at www.mbaser.com, is nearly identical to First Mortgage's website, located at www.firstmortgagecorp.com.

47.    Baser copied First Mortgage's website, an important marketing tool which reflects First Mortgage's marketing strategies, to cause confusion among First Mortgage's

customers.  Copies of the home pages of Baser's and First Mortgage's websites are included

below.

Baser's Website



First Mortgage's website



**First Mortgage Corporation has become one of Chicagoland's largest Mortgage Bankers.**

Since opening our doors in 1984, we have grown rapidly, with our newest office in Dyer, IN.

We offer the largest variety of loan programs and competitive pricing. With this diversity and the knowledge and expertise of our loan officers, we are able to fulfill each of our client's specific needs.

Buying a new home is a source of anxiety, frustration – and a huge sense of accomplishment. You didn't pick the house that was best for someone else, you picked the one that's right for you! Trust our professionals to find the mortgage loan that best fits your needs, too. "Less paperwork and more personal attention" means you enter a frustration-free zone from application to decision. Getting the right mortgage loan is like getting the keys to your new house! We can help you get there.

Refinancing your current mortgage has never been easier. If you thought refinancing meant getting buried under mountains of paperwork, think again! We make it easy and worry-free to reduce your interest rate and monthly payment. We can even help you pay down your balance more quickly for comparable monthly payment. Let our professionals guide you to the very best refinanced loan!

Tapping into your home equity is easier than ever before. You've been paying down your balance, and property values have gone up! Tap into that wealth and reward yourself. We'll help with the best program to fit your goals.

Our mortgage professionals give you the personal attention you deserve and treat you with the respect due a valued customer. We understand you're making a commitment in buying a new home, refinancing and mortgage or cashing out your home equity. So we make a commitment to you. We will help you qualify, apply and be approved for the right mortgage loan for you. Not anybody else!

Please navigate our website to learn more about us, what we do for you, and how easy it is to get started.

**FIRST MORTGAGE CORPORATION**
19831 Governors Highway
Flossmoor, IL 60422
(708) 957-2020
Fax (708) 957-6697

257 Springfield Avenue
Joliet, IL 60435
(815) 744-2111
Fax (815) 744-2122

1467 W US Highway
Dyer, IN 46311
(219) 865-0505
Fax (219) 864-1481

An Illinois/Indiana Residential Mortgage Licensee. Equal Housing Lender
License #302

IL Dept. of Financial and Professional Regulation
310 South Michigan Avenue, Suite 2130
Chicago, IL 60604
312-793-3000

First Mortgage Corporation
Toll Free Phone: 1-888-957-0095

Copyright © 2007 First Mortgage Corporation
Portions Copyright © 2007 a la mode, inc.
Another XSite by a la mode, inc. | Admin Login| Terms of Use| Site Map

**Today's Top Real Estate News:**

Provided by Inman News.
Monday, August 06, 2007

Neighbor disputes erupt when trying to sell home

We forgot to tell you about the broken heat

Keep that crummy desk, it could be worth thousands

Save money on home improvement

How to profit from probates

More news...

Got a Question?

Choose your language
English | Español

- When to get Qualified
  • Are You Pre-Approved?
  • How Much You Can Afford
  • Buyer Ready
  • The Loan Process
  • Get Your Loan Funded!
- What is a credit score?
  • Your FICO score
  • Mistakes on Your Report
  • Improve Your Credit Score
- Site Map
  • Mortgage Calculators
- Real Estate Glossary
- 100% Financing
  • Investment Loan Programs
  • VA Loans
- Refinancing Options
  • Fixed vs. Adjustable
- Closing Costs
  • Financing Closing Costs
- Types of Interest
- Our Profile
- Home Buyer Privileges

11

48.    For instance, Baser's home page has a banner of the Chicago skyline identical to the banner on the top of First Mortgage's home page. Five of the six tabs on the top of Baser's home page are identical to five of the six tabs on the top of First Mortgage's home page.

49.    The six tabs at the top of Baser's home page are:

- Home
- Loan Application Info
- Loan Application
- Loan App Checklist
- Customer Login
- The Loan Process

The six tabs at the top of First Mortgage's home page are:

- Home
- Loan Application Info
- Loan App Checklist
- Loan Application
- Customer Login
- Contact Us

50.    The content of four of the pages described in Paragraph 48 is identical on the two websites.

51.    12 of the 16 tabs located along the left-hand side of Baser's home page are identical to 12 of the 23 tabs located along the left-hand side of First Mortgage's home page.

**Baser Violated His Fiduciary Duties, the Shareholder Agreement and the Handbook**

52.    In direct violation of the Shareholder Agreement and in contravention of his fiduciary duties, Baser accepted employment with America's Mortgage, a residential mortgage lender doing business within a fifty mile radius of First Mortgage's Flossmoor, Illinois office.

53.     In direct violation of the Shareholder Agreement and in contravention of his fiduciary duties, upon information and belief, Baser has been soliciting First Mortgage customers during his employment with America's Mortgage and on behalf of America's Mortgage.

54.     In direct violation of the Shareholder Agreement and in contravention of his fiduciary duties, upon information and belief, Baser has been inducing First Mortgage customers not to do business with First Mortgage and instead to do business with America's Mortgage.

55.     In direct violation of the Shareholder Agreement and in contravention of his fiduciary duties, upon information and belief, Baser has been performing services for First Mortgage customers while employed by America's Mortgage.

56.     In direct violation of the Handbook and in contravention of his fiduciary duties, upon information and belief, Baser has improperly disclosed his commission schedule, which describes his compensation package with First Mortgage, to America's Mortgage.

57.     In direct violation of the Handbook and in contravention of his fiduciary duties, upon information and belief, Baser has failed to return First Mortgage's property, including without limitation confidential customer and referral information contained in the Excel, By Referral and Mortgage Coach databases.

## COUNT I
## BREACH OF FIDUCIARY DUTY
## (AGAINST BASER)

58.     First Mortgage incorporates Paragraphs 1 through 57 as if fully set forth herein.

59.     As a Shareholder of First Mortgage with access to confidential and proprietary information, Baser owed First Mortgage certain fiduciary duties.

60.    Among these fiduciary duties is the duty of loyalty and fair dealing while working for First Mortgage, the duty to advance First Mortgage's interests, the duty to abide by the Shareholder Agreement and the duty not to use First Mortgage's confidential information in ways adverse to First Mortgage's interests.

61.    Baser knowingly breached these duties by, among other things: (1) engaging in business within a fifty mile radius of First Mortgage's Flossmoor office by working for America's Mortgage, a direct competitor of First Mortgage; (2) upon information and belief, soliciting First Mortgage customers; (3) upon information and belief, inducing or encouraging First Mortgage customers not to do business with First Mortgage or reducing the amount of business they do with First Mortgage; (4) upon information and belief, performing services for First Mortgage customers while employed by America's Choice; and (5) upon information and belief, copying First Mortgage's confidential customer and referral information and using that information to his benefit and First Mortgage's detriment while working for America's Mortgage.

62.    First Mortgage has been damaged as a direct and proximate result of Baser's conduct in an amount greater than $1,000,000.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Baser:

   a)    awarding First Mortgage all actual and consequential damages, in an amount to be determined at trial;

   b)    awarding First Mortgage punitive damages in an amount to be determined at trial;

   c)    awarding First Mortgage its costs, expenses and attorney's fees pursuant to the Shareholder Agreement; and

   d)    awarding any other relief this Court deems appropriate.

## COUNT II
### INDUCING BREACH OF FIDUCIARY DUTY
### (AGAINST AMERICA'S MORTGAGE)

63.    First Mortgage incorporates Paragraphs 1 through 62 as if fully set forth herein.

64.    As a Shareholder of First Mortgage with access to confidential and proprietary information, Baser owed First Mortgage certain fiduciary duties.

65.    Among these fiduciary duties is the duty of loyalty and fair dealing while working for First Mortgage, the duty to advance First Mortgage's interests, the duty to abide by the Shareholder Agreement and the duty not to use First Mortgage's confidential information in ways adverse to First Mortgage's interests.

66.    Baser knowingly breached these duties by, among other things: (1) engaging in business within a fifty mile radius of First Mortgage's Flossmoor office by working for America's Mortgage, a direct competitor of First Mortgage; (2) upon information and belief, soliciting First Mortgage customers; (3) upon information and belief, inducing or encouraging First Mortgage customers not to do business with First Mortgage or reducing the amount of business they do with First Mortgage; (4) upon information and belief, performing services for First Mortgage customer while employed by America's Choice; and (5) upon information and belief, copying First Mortgage's confidential customer and referral information and using that information to his benefit and First Mortgage's detriment while working for America's Mortgage.

67.    America's Mortgage actively induced, promoted, encouraged and participated in Baser's breaches of his fiduciary duties, as described above, to First Mortgage. For instance, upon information and belief, Baser consulted with the attorney representing

15

America's Mortgage prior to resigning from First Mortgage for advice regarding ending his employment with First Mortgage.

68.    America's Mortgage intended to and did directly benefit by its conduct by, among other things, employing Baser to work as a loan officer for America's Mortgage, receiving business from First Mortgage's customers, attempting to solicit First Mortgage employees to work for America's Mortgage and by using First Mortgage's confidential customer and referral information for the benefit of America's Mortgage.

69.    America's Mortgage induced Baser to breach his fiduciary duties through a continuing pattern of willful, wanton, illegal and deliberate conduct.

70.    America's Mortgage took such actions with the knowledge that they would assist Baser in breaching his fiduciary duties.

71.    America's Mortgage's wrongful conduct has benefited America's Mortgage and has damaged and continues to damage First Mortgage by taking business to which First Mortgage is entitled.

72.    First Mortgage has been damaged as a direct and proximate result of America's Mortgage's conduct in an amount greater than $1,000,000.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against America's Mortgage:

a)    awarding First Mortgage all actual and consequential damages, in an amount to be determined at trial;

b)    awarding First Mortgage punitive damages in an amount to be determined at trial;

c)    awarding First Mortgage its costs, expenses and attorney's fees; and

d)    awarding any other relief this Court deems appropriate.

16

## COUNT III
## BREACH OF CONTRACT
## (AGAINST BASER)

73.    First Mortgage incorporates Paragraphs 1 through 72 as if fully set forth herein.

74.    On or around January 19, 2005, Baser entered into the Shareholder Agreement with First Mortgage.

75.    The Shareholder Agreement is a valid and enforceable contract between Baser and First Mortgage.

76.    Baser agreed when he signed the Shareholder Agreement not to engage in certain activities.

77.    Baser breached the Shareholder Agreement by: (1) engaging in business within a fifty mile radius of First Mortgage's Flossmoor office by working for America's Mortgage, a direct competitor of First Mortgage; (2) upon information and belief, soliciting First Mortgage customers; (3) upon information and belief, inducing or encouraging First Mortgage customers not to do business with First Mortgage or reducing the amount of business they do with First Mortgage; (4) upon information and belief, performing services for First Mortgage customer while employed by America's Choice; and (5) upon information and belief, copying First Mortgage's confidential customer and referral information and using that information to his benefit and First Mortgage's detriment while working for America's Mortgage.

78.    Baser's breaches of the Shareholder Agreement have caused First Mortgage to be injured in amount greater than $1,000,000.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Baser:

a)    prohibiting Baser from violating the Shareholder Agreement;

17

b) awarding First Mortgage all actual and consequential damages, in an amount to be determined at trial;

c) awarding First Mortgage its costs, expenses and attorney's fees pursuant to the Shareholder Agreement; and

d) awarding any other relief this Court deems appropriate.

<u>COUNT IV</u>
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(AGAINST AMERICA'S MORTGAGE)**

79. First Mortgage incorporates Paragraphs 1 through 78 as if fully set forth herein.

80. The Shareholder Agreement is a valid and enforceable contract between Baser and First Mortgage.

81. America's Mortgage knew of the Shareholder Agreement between Baser and First Mortgage.

82. Upon information and belief, America's Mortgage intentionally and tortiously interfered with the contract between Baser and First Mortgage by, among other things: (1) inducing Baser to engage in business within a fifty mile radius of First Mortgage's Flossmoor office by working for America's Mortgage, a direct competitor of First Mortgage; (2) upon information and belief, inducing Baser to solicit First Mortgage customers; (3) upon information and belief, inducing Baser to encourage First Mortgage customers not to do business with First Mortgage or reducing the amount of business they do with First Mortgage; (4) upon information and belief, inducing Baser to perform services for First Mortgage customer while employed by America's Choice; and (5) upon information and belief, inducing Baser to copy First Mortgage's confidential customer and referral information and using that information to his benefit and First Mortgage's detriment while working for America's Mortgage.

83.     By its conduct, America's Mortgage intentionally caused Baser to breach his contract with First Mortgage. America's Mortgage's conduct was intentional, malicious and unjustified, as America's Mortgage acted solely for its own benefit or solely to injure First Mortgage.

84.     Baser breached his contract with First Mortgage due to the wrongful conduct of America's Mortgage in inducing Baser to work for America's Mortgage and inducing Baser to take First Mortgage's confidential customer and referral information for the benefit of America's Mortgage.

85.     As a direct and proximate result of America's Mortgage's conduct, Baser breached his obligations to First Mortgage. First Mortgage has been damaged in an amount greater than $1,000,000 as a result of this breach.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Baser:

a)   prohibiting America's Mortgage from interfering with Baser's obligations under the Shareholder Agreement;

b)   awarding First Mortgage damages sustained as a result of America's Mortgage's wrongful conduct;

c)   awarding First Mortgage punitive damages in an amount to be determined at trial;

d)   awarding First Mortgage its costs, expenses and attorney's fees; and

e)   awarding any other relief this Court deems appropriate.

### COUNT V
### COMMON LAW UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)

86.     First Mortgage incorporates Paragraphs 1 through 85 as if fully set forth herein.

87.    Baser copied First Mortgage's website as his own America's Mortgage website. This conduct was intended to and is likely to confuse customers as to the source, origin, affiliation, connection or association of Baser's and America's Mortgage's services. That is, customers will incorrectly believe that First Mortgage provides the goods and services provided by Defendants.

88.    The confusion likely caused by Defendants' representations will harm First Mortgage by resulting in decreased sales and an increased likelihood that consumers will use Baser's and America's Mortgage's goods and services under the assumption that those goods and services were provided by First Mortgage.

89.    Defendants' conduct constitutes unfair competition under the common law of the State of Illinois.

90.    First Mortgage has been harmed by Defendants' actions in the amount of at least $1,000,000.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Defendants:

a)    ordering that Defendants refrain from using First Mortgage's website;

b)    awarding First Mortgage its actual damages stemming from such unfair competition; and

c)    awarding First Mortgage other relief, including reasonable attorneys' fees, as the Court deems appropriate.

## COUNT VI
## MISAPPROPRIATION OF TRADE SECRETS
### (AGAINST ALL DEFENDANTS)

91.    First Mortgage incorporates Paragraphs 1 through 90 as if fully set forth herein.

92.    First Mortgage's confidential databases contain trade secrets as defined in 765 ILCS § 1065/2(d) in that they are sufficiently secret to derive economic value from not being generally known to others who can get economic value from its disclosure or use. First Mortgage makes efforts that are reasonable under the circumstances to maintain the secrecy and confidentiality of the information. First Mortgage developed this information at great expense over a long period of time. It is a valuable part of First Mortgage's business and is not known or available to competitors or the public.

93.    First Mortgage has not given Defendants express or implied consent to use or disclose First Mortgage's trade secrets or confidential information.

94.    Baser's disclosure of First Mortgage's trade secrets and confidential information to America's Mortgage constitutes misappropriation of trade secrets.

95.    Defendants' use of First Mortgage's trade secrets and confidential information constitutes trade secrets misappropriation.

96.    Defendants' actions in misappropriating First Mortgage's trade secrets were willful and malicious, entitling First Mortgage to exemplary damages under 765 ILCS § 1065/4(b) in an amount up to twice the actual damages and unjust enrichment.

97.    Because Defendants' actions were willful and malicious, First Mortgage is entitled to attorneys' fees under 765 ILCS § 1065/5.

98.    Pursuant to 765 ICLS § 1065/4, First Mortgage is entitled to actual losses caused by the Individual Defendants' misappropriation and the amount of Defendants' unjust enrichment.

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Defendants:

a) awarding such damages as provided in 765 ILCS § 1065/4, including the actual loss to First Mortgage in the amount of at least $1,000,000 and the unjust enrichment to Defendants for the unauthorized use and disclosure of First Mortgage's trade secrets and confidential information, or alternatively for a reasonable royalty as provided in that section;

b) awarding exemplary damages as provided for in 765 ILCS § 1065/4(b);

c) awarding First Mortgage's attorneys' fees as provided for in 765 ILCS § 1065/5; and

d) awarding any other relief this Court deems appropriate.

## COUNT VII
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
## (AGAINST ALL DEFENDANTS)

99.     First Mortgage incorporates Paragraphs 1 through 98 as if fully set forth herein.

100.     First Mortgage maintains one or more computers and/or computer systems that are "protected computers" pursuant to 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication. First Mortgage's confidential and proprietary information is stored on, and may be accessed from, one of these protected computers.

101.     Baser used his access to one of First Mortgage's protected computers for, upon information and belief, the purpose of misappropriating First Mortgage's confidential and proprietary electronic information, including First Mortgage's customer databases.

102.     Upon information and belief, Baser downloaded and copied, and thus obtained, confidential and proprietary information from First Mortgage's computers before resigning and retained this information for the use and benefit of himself and America's Mortgage.

103.     Upon information and belief, Baser intentionally "exceeded authorized access," as that term is defined in 18 U.S.C § 1030(e)(6), to First Mortgage's protected

computers by requesting and receiving access to First Mortgage's confidential databases and then logging on to First Mortgage's computer system to obtain First Mortgage's confidential databases for Defendants' gain and for use in interstate commercial activities. Baser and America's Mortgage have thus obtained information to which they were not entitled, including via interstate communication, thereby violating 18 U.S.C § 1030(a)(2)(C).

104.    By exceeding, and attempting to exceed, authorized access to First Mortgage's protected computers, Defendants have caused First Mortgage to incur loss in terms of the costs of responding to Defendants' conduct aggregating to at least $5,000 during a one-year period, pursuant to 18 U.S.C. § 1030(5)(B)(i).

105.    Upon information and belief, Defendants have also caused impairment to the integrity or availability of First Mortgage's data, by taking proprietary and confidential information from a protected computer. This information has economic value to First Mortgage in that it is used to generate business for First Mortgage.

106.    Upon information and belief, Defendants have also, knowingly and with intent to defraud First Mortgage, exceeded Baser's authorized access to First Mortgage's protected computers and obtained First Mortgage's confidential and proprietary information, such information being of considerable value to Defendants, thereby violating 18 U.S.C. § 1030(a)(4).

WHEREFORE, First Mortgage asks that this Court enter an Order in its favor and against Defendants:

      a)   awarding First Mortgage damages in the amount of at least $1,000,000 pursuant to 18 U.S.C. § 1030(g);

      b)   awarding First Mortgage its costs, expenses, and attorney's fees; and

      c)   awarding any other relief this Court deems appropriate.

FIRST MORTGAGE DEMANDS TRIAL BY JURY.

Dated: August 9, 2007

Respectfully submitted,

_____
One of the Attorneys for First Mortgage
Corporation

Jose A. Lopez
Anna Eisner Seder
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
312.701.9300

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

The First Mortgage Corp.

    -vs.-

America's Mortgage Choice LLC
+ Michael Boser

No. 07 L 8424

DISMISSAL ORDER

This cause coming on for hearing, due notice having been given, and the Court being duly advised in the premises:

IT IS HEREBY ORDERED:

___ THIS CAUSE IS DISMISSED WITH PREJUDICE AND WITHOUT COSTS BY AGREEMENT OF THE PARTIES (4011).

___ THE COURT RETAINS JURISDICTION TO ASSURE EXECUTION OF THE SETTLEMENT DOCUMENTS.

X THIS CAUSE IS VOLUNTARILY DISMISSED WITHOUT PREJUDICE AND WITHOUT COSTS.

___ THIS CAUSE IS DISMISSED FOR WANT OF PROSECUTION. (4005)

___ THE CASE HAVING BEEN PREVIOUSLY REMOVED TO FEDERAL COURT, THE CAUSE IS DISMISSED W/OUT PREJUDICE (8023).

___ THIS CASE DOES NOT CONTAIN A COMMERCIAL LITIGATION AND IS HEREBY REMOVED FROM THE INDIVIDUAL CALENDAR OF JUDGE LEE PRESTON & RETURNED TO THE MASTER CALENDAR (8212).

The ~~status~~ case management hearing set for Dec. 6, 2007 at 9:30 a.m. is stricken.

Defendants' motions to dismiss are stricken.
Defendants' motions to quash or stay are stricken.

Atty. No. 15056
Name Schopf + Weiss LLP /AES

Attorney for Plaintiff
Address 30 S. Wacker, 28th Floor
City Chicago  IL 60606
Telephone
    312-701-9300

JUDGE LEE PRESTON    20

ENTER:     OCT 30 2007

Circuit Court - 1652

_____
Judge Lee Preston
Judge's No. 1652